IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

Case No. _____

DAVID GASPER,

    Plaintiff,

vs.

EIDP, INC., f/k/a E.I. DUPONT DE NEMOURS AND COMPANY; CORTEVA, INC.; THE PENSION AND RETIREMENT PLAN; and THE BENEFIT PLANS ADMINISTRATIVE COMMITTEE,

    Defendants.

## COMPLAINT

### PRELIMINARY STATEMENT[1]

David Gasper ("Plaintiff") brings this action under the Employee Retirement Income Security Act of 1974, as amended ("ERISA") against EIDP, Inc., formerly known as E.I. DuPont de Nemours and Company; Corteva, Inc.; the Pension and Retirement Plan; and the Benefit Plans Administrative Committee. Plaintiff brings this ERISA action (1) to recover benefits due to him under the terms of the Plan, to enforce his rights under the terms of the Plan, and to clarify his rights to future benefits under the terms of the Plan; (2) for other appropriate equitable relief, on account of the erroneous administration of Plaintiff's qualified domestic relations order under the Plan and in violation of ERISA; and (3) to recover statutory damages for the failure to

---

[1] This Preliminary Statement gives a synopsis of Plaintiff's claims and is not intended as an allegation to be answered by Defendants.

provide Plaintiff with Plan documents, as required by ERISA. Plaintiff has been a participant in the Plan at all relevant times by virtue of his employment with E.I. DuPont de Nemours and Company/EIDP, Inc., which is the sponsor of the Plan.

## PARTIES

1. Plaintiff is a citizen and resident of North Carolina.

2. E.I. du Pont de Nemours and Company was founded more than 200 years ago. E.I. du Pont de Nemours and Company adopted the Pension and Retirement Plan ("Plan") in 1904.

3. E.I. du Pont de Nemours and Company merged with The Dow Chemical Company and became subsidiaries of a single company, DowDuPont Inc. ("DowDuPont"), on or around August 31, 2017. Following the merger, DowDuPont later spun-off into three separate, publicly traded companies: Corteva, Inc. ("Corteva"), focusing on agricultural chemicals; Dow, Inc., focusing on materials science; and DuPont de Nemours, Inc., focusing on specialty product industries (collectively, the "Spin-Off").

4. Following the Spin-Off, E.I. du Pont de Nemours and Company became a subsidiary of Corteva on June 1, 2019. Although E.I. du Pont de Nemours and Company continued to be the plan sponsor of the Plan, Corteva assumed all responsibility for the Plan.

5. In or around the end of 2022 or beginning of 2023, E.I. du Pont de Nemours and Company changed its name to EIDP, Inc. ("Defendant EIDP"). The Plan is still sponsored by Defendant EIDP today.

6. Defendant The Benefit Plans Administrative Committee ("Committee") is named as the plan administrator of the Plan in the Plan document and summary plan description and therefore is the Plan Administrator of the Plan within the meaning of ERISA §3(16), 29 U.S.C. §1002(16). In the alternative, Defendant EIDP was named as the plan administrator of the Plan in the Plan

document at the time of many of the factual matters described herein, and continues to be the employer sponsoring the Plan, and therefore is the plan administrator of the Plan within the meaning of ERISA §3(16), 29 U.S.C. §1002(16). Further in the alternative, Defendant Corteva assumed all responsibility for the operation of the Plan and therefore is the plan administrator of the Plan within the meaning of ERISA §3(16), 29 U.S.C. §1002(16).

7. The Plan is an employee retirement benefit plan organized and subject to ERISA and the regulations promulgated thereunder.

## JURISDICTION AND VENUE

8. This court has jurisdiction to hear this claim pursuant to 28 U.S.C. § 1331, in that the claim arises under the laws of the United States. Specifically, Plaintiff brings this action to recover benefits and clarify his right to benefits under ERISA §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B); for other appropriate equitable relief, as allowed by ERISA §502(a)(3), 29 U.S.C. §1132(a)(3); and to recover statutory damages under ERISA §502(c), 29 U.S.C. §1132(c).

9. Venue in the Western District of North Carolina is appropriate by virtue of Defendants doing business and being found in this District.

## FACTUAL ALLEGATIONS

10. Plaintiff began his employment with Defendant EIDP on February 1, 1984. Shortly thereafter, Plaintiff began participating and accruing a vested interest in the Plan. Defendant EIDP was the Plan's sponsor and administrator when Plaintiff started his employment.

11. Plaintiff and his wife were married in 1985. In December 2010, they divorced.

12. As part of the divorce, Plaintiff's interest in the Plan was included in the equitable distribution of marital assets.

13. ERISA §206, 29 U.S.C. §1056 provides that a participant's benefit under a pension plan may be assigned or alienated pursuant to a "domestic relations order" ("DRO") issued and approved by the family law court only if the DRO is determined to be a qualified domestic relations order ("QDRO"). Under ERISA, the plan administrator is responsible for determining whether any DRO received is a QDRO.

14. ERISA requires a plan to establish reasonable procedures to determine the qualified status of DROs and to administer distributions under such qualified orders. As a plan fiduciary, the plan administrator must follow the plan's QDRO determination procedures so as to review the DRO prudently and carefully to ensure that the DRO complies with all ERISA and plan requirements.

15. Once the plan administrator determines that the DRO complies with all ERISA and plan requirements, the plan administrator must approve, or "qualify" the DRO as a QDRO under the subject plan for the division of plan assets to divorcing spouses. ERISA §206(d)(3)(A), 29 U.S.C. §1056(d)(3)(A) then requires that "[e]ach pension plan shall provide for the payment of benefits in accordance with the applicable requirements of any qualified domestic relations order."

16. However, where the plan administrator determines a DRO does not qualify because it does not comply with all of the ERISA and plan requirements, the plan administrator must give notice to the submitting parties with specific reasons for the rejection. The submitting parties are then provided the opportunity to correct the deficiencies in the DRO and resubmit a corrected DRO to the plan administrator.

17. On or about January 2013, Defendant EIDP, as the then plan administrator for the Plan, provided Plaintiff and his then-wife with written materials about Plan requirements to assist them

in preparing a Plan-compliant DRO for submission to the family law court, the North Carolina General Court of Justice, District Court Division ("Family Court").

18. On February 26, 2013, the Family Court issued a DRO dividing Plaintiff's defined benefit pension under the Plan between him and his then-wife, who was the alternate payee. The DRO provided that "The Alternate Payee's benefit may be reduced as necessary to cover the cost of the QJSA [Qualified Joint and Survivor Annuity] awarded to the Alternate Payee."

19. Defendant EIDP, the Plan Administrator of the Plan in 2013, received the DRO on April 3, 2013 for determining if it qualified as a QDRO under the Plan.

20. On May 1, 2013, Defendant EIDP, as then Plan Administrator, issued a letter and its QDRO determination report ("Report"), stating that the Plan Administrator determined the DRO qualified as a QDRO and that the Plan Administrator would distribute benefits in accordance with the QDRO. The Report makes no statements or representations about any deficiencies in the QDRO.

21. On September 12, 2018, Defendant EIDP informed Plan participants that it was freezing their pay and service amounts under the Plan, such that participants would not accrue any additional future benefits after November 30, 2018.

22. Certain Plan participants, including Plaintiff, were eligible to retire under the Plan on June 1, 2019 and begin receiving their Plan pension benefits while continuing to work. As Plaintiff would not accrue any additional benefits under the Plan on account of the freeze, he elected to begin his Plan benefit distributions.

23. On or about April 1, 2019, the Company sent Plaintiff a package describing his Plan benefits and how to elect commencement of his Plan benefits.

24. However, when the Plan provided Plaintiff his benefit statement, it showed that Plaintiff's portion of his retirement benefits was materially reduced by more than 10% to cover the cost of the QDRO's QJSA benefit for the alternate payee, his former spouse.

25. In or around April 2019, Plaintiff communicated with the Plan Administrator about the misallocation of the QJSA costs causing a material reduction in his pension benefit. Because time was of the essence for Plaintiff to commence his benefit to avoid nonrecoverable loss of monthly pension benefits, the Plan Administrator agreed to accept by telephone the Plaintiff's claim about misallocation of QJSA costs. Plaintiff provided verbatim the specific terms in the QDRO previously approved by the Plan administrator on May 1, 2013, which assigned any QJSA costs to the alternate payee and not to Plaintiff.

26. ERISA requires plans to include certain procedures for filing claims and for reviewing claims that are denied, with the intent to make sure that all benefit claims are considered fully, clearly, and promptly. If a claim is denied, a participant will be told in writing within 90 days after the claim is received. The Plan's description of its claim procedures state that if a reply cannot be made within 90 days, the claimant will be given a written notice "explaining the reasons" for the delay, the date by which the Plan expects to render its decision, and that extensions may not exceed another 90 days.

27. The Plan Administrator did not give Plaintiff written notice within 90 days from his filing of his claim in mid-April 2019 of a decision regarding his claim, an explanation of any reasons for the delay, or the Administrator's need for a 90-day extension and the date by which the Plan expected to render its decision.

28. On October 24, 2019, the Plan Administrator denied Plaintiff's claim. The written denial of Plaintiff's claim was not treated as a denial of an ERISA claim. Rather, the Plan

Administrator sent an "Informational Notice Pension and Retirement Plan." The Informational Notice Pension and Retirement Plan document did not include all required specific information to which the Plaintiff-participant was entitled when a claim for benefits is denied by the Plan Administrator.

29. The Plan Administrator stated in its October 24, 2019 notice that the "court order was qualified disregarding the [QJSA cost] language" that assigned QJSA costs to the alternate payee." The 2013 QDRO determination Report does not state within its four corners that the Plan administrator disregarded the DRO's QJSA cost language assigning any costs to the Alternate Payee.

30. Plaintiff filed an appeal of this denial, which the plan administrator treated as an initial claim, on January 15, 2020. The Plan Administrator denied Plaintiff's claim on June 12, 2020. In July 2020, Plaintiff made his final appeal, which the Plan Administrator denied on September 29, 2020. According to Plan Administrator's claims procedures, when an appeal is denied, the notice of denial will include references to the specific Plan provisions on which the denial is based. In its denial of Plaintiff's first appeal, the Plan Administrator did not include relevant references to specific Plan provisions in effect in 2013 when the Plan Administrator qualified the DRO as a QDRO. The Plan Administrator did not include any references to specific Plan provisions on which it based its denial of Plaintiff's second appeal. To the extent required under law, Plaintiff exhausted his administrative remedies, and his claim is ripe for judicial review pursuant to ERISA § 502, 29 U.S.C. § 1132.

31. Defendant Committee has a fiduciary obligation to Plaintiff to administer the Plan properly and in compliance with its terms, ERISA, and the Internal Revenue Code ("Code").

32. ERISA 1056(d)(3)(a) requires that a pension plan shall provide for the payment of benefits in accordance with the applicable requirements of any QDRO.

33. Plaintiff requested Plan documents, first by calling the Plan's retiree service department's phone number in or around June 2020.

34. Plaintiff requested Plan documents a second time from Corteva in writing on July 20, 2020.

35. The Plan Administrator received Plaintiff's written request shortly thereafter.

36. Plaintiff informed the Plan Administrator in writing on September 18, 2020 about not receiving the Plan documents after requesting them in June and July. Plaintiff made his third request for Plan documents directly to the Plan Administrator, asking for a brief explanation for any deficiencies in fulfilling his request. The Plan Administrator did not respond to Plaintiff's direct request.

37. Plaintiff is entitled to the requested documents under ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4), and the plan administrator is required to furnish such documents to Plaintiff within 30 days of receiving Plaintiff's request for Plan documents.

38. Defendant Committee has failed and refused to provide Plaintiff with the requested Plan documents.

39. Defendant Committee has not provided Plaintiff with any reasons for its failure and refusal to provide the requested Plan documents to which Plaintiff is entitled under ERISA.

40. Plaintiff has been harmed by Defendant Committee's failure to provide the requested Plan documents in that, among other things, Plaintiff has not received all information to which he is entitled under ERISA and has had to prosecute his claim through the administrative process and litigation without such information.

## FIRST CLAIM FOR RELIEF:
## WRONGFUL DENIAL OF BENEFITS UNDER ERISA, 29 U.S.C. §1132

41. Plaintiff reincorporates and realleges the above allegations as if fully set forth herein.

42. Defendants EIDP, Corteva, the Committee, and the Plan have wrongfully denied benefits to Plaintiff in violation of the Plan provisions and ERISA for the following reasons:

    a. Plaintiff has been wrongfully denied retirement benefits;

    b. Defendants EIDP, Corteva, and the Committee failed to accord proper weight to the evidence in the administrative record; and

    c. Defendant Plan has violated its contractual obligation to furnish retirement benefits to Plaintiff.

## SECOND CLAIM FOR RELIEF:
## OTHER APPROPRIATE EQUITABLE RELIEF
## UNDER ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)

43. Plaintiff reincorporates and realleges the above allegations as if fully set forth herein.

44. Pursuant to Federal Rule of Civil Procedure 8, Plaintiff pleads this claim for relief in the alternative to his first claim for relief to the extent such claims overlap.

45. ERISA §206, 29 U.S.C. §1056 provides that a plan administrator must determinate within a reasonable amount of time after submission of a DRO whether the DRO qualifies under ERISA and the plan as a QDRO and will be accepted by the plan administrator. Plan administrators have a fiduciary duty to determine whether DROs are QDROS and to inform participants and alternate payees accordingly so that they may consider this important financial information during the course of their divorce proceedings.

46. If a plan administrator determines that a DRO is not a QDRO, the plan administrator must inform the participant and alternate payee and permit them to redraft or amend the DRO so

that it will qualify as a QDRO and so both parties know the terms under which the retirement plan assets under issue will be divided pursuant to the divorce.

47. The DRO is an order from a state law court having jurisdiction over family law matters and is not subject to ad hoc change or alteration by a plan administrator.

48. If the Plan Administrator did not believe the Plaintiff's DRO met the qualifications of ERISA and the Plan to be a QDRO, the Plan Administrator had a fiduciary duty to reject the DRO, explain its rejection to Plaintiff and his then-wife, and permit Plaintiff and his wife to re-draft the DRO (with subsequent Family Court approval) to comply with ERISA and the Plan.

49. In completing his divorce, including the distribution of all marital assets, Plaintiff relied on the Plan Administrator's approval of the DRO as a QDRO and materially and detrimentally took financial positions on division of other marital assets based on the Plan Administrator qualifying the DRO as a QDRO.

50. The assignment of the costs of the QJSA to the alternate payee, Plaintiff's former spouse, is a material term of the QDRO.

51. The Plan Administrator breached its fiduciary duties by failing to (i) establish reasonable procedures for determination of QDROs to ensure compliance with ERISA and Plan terms, and (ii) follow reasonable procedures for determination of QDROs to ensure compliance with ERISA and Plan terms.

52. The Plan Administrator also breached its fiduciary duty by failing to make QDRO determinations in a timely and correct manner.

53. The Plan Administrator also breached its fiduciary duty by misinforming Plaintiff of the Plan Administrator's QDRO determination.

54. To the extent that the Committee and/or Corteva is the Plan Administrator of the Plan, the Committee and/or Corteva was aware of Defendant EIDP's determination that the DRO in the present case was a QDRO and (i) had knowledge of the prior QDRO determination by Defendant EIDP through Plaintiff's prosecution of his claim through the administrative process and through its records and information concerning the Plan and its participants, including Plaintiff, and (ii) failed to abide by that determination. As a result, the Committee and/or Corteva are alternatively liable as co-fiduciaries or successor fiduciaries for the fiduciary breaches described herein.

55. Plaintiff has suffered harm as a result of Defendant EIDP, Corteva, and Committee's conduct and breaches of fiduciary duty to administer the Plan according to its terms.

56. Plaintiff is entitled to equitable, injunctive, and remedial relief requiring that the Plan Administrator (whether Defendant EIDP, Corteva, or the Committee):

   a. Establish reasonable procedures for review and determination of QDROs to ensure compliance with Plan terms and ERISA requirements;

   b. Follow reasonable procedures for review and determination of QDROs to ensure compliance with Plan terms and ERISA requirements;

   c. Administer the Plan in compliance with its terms, including terms requiring QDROs;

   d. Administer the Plans in compliance with applicable legal requirements, including ERISA and the Code, including terms requiring QDROs;

   e. Be ordered to restore the amount of funds to Plaintiff that would have been paid to him had the Plan Administrator not assigned the costs of the QDRO to Plaintiff;

   f. Be surcharged for the funds necessary to restore Plaintiff's accounts or interests in the Plans that would have remained had the Plan Administrator not assigned the costs of

the QDRO to Plaintiff;

g.  Ordering that Plaintiff's future benefits from the Plan shall be paid without diminution for any costs of the QJSA;

h.  Ordering that any future benefits of the alternate payee from the Plan shall be paid without diminution for any costs of the QJSA; and

i.  Other appropriate declaratory, injunctive, and equitable relief.

### THIRD CLAIM FOR RELIEF: STATUTORY DAMAGES FOR FAILURE TO PRODUCE DOCUMENTS REQUIRED BY ERISA §§ 104 and 502, 29 U.S.C. §§ 1024 and 1132

57. Plaintiff reincorporates and realleges the above allegations as if fully set forth herein.

58. Defendant Committee has failed and refused to provide Plaintiff with documents that he requested and to which he is entitled under ERISA § 104(b)(4), 29 USC § 1024(b)(4).

59. Plaintiff is entitled to recover statutory damages from Defendant Committee, calculated at the rate of $110 per day, from thirty days after the date Defendant Committee received Plaintiff's written request for the documents, and continuing until the date the correct documents are produced, pursuant to ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4) and ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1).

### FOURTH CLAIM FOR RELIEF: ATTORNEY'S FEES UNDER ERISA § 502, 29 USC § 1132

60. Plaintiff reincorporates and realleges the above allegations as if fully set forth herein.

61. Plaintiff is entitled to his attorney's fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g).

WHEREFORE, Plaintiff prays that the Court:

1.  Grant Plaintiff declaratory and injunctive relief, finding that (i) he is entitled to recover

-12-
Case 3:23-cv-00512-FDW-SCR    Document 1    Filed 08/14/23    Page 12 of 14

all past reductions in his pension that were improperly used to pay the cost of the QJSA, and (ii) for all future benefits, to have his monthly benefit restored to the full amount to which he is entitled;

2. Grant Plaintiff equitable, injunctive, and remedial relief requiring that Defendants:

    a. Establish reasonable procedures for review and determination of QDROs to ensure compliance with Plan terms and ERISA requirements;

    b. Follow reasonable procedures for review and determination of QDROs to ensure compliance with Plan terms and ERISA requirements;

    c. Administer the Plans in compliance with their terms, including terms requiring qualified joint and survivor annuities;

    d. Administer the Plans in compliance with applicable legal requirements, including ERISA and the Code, including terms requiring qualified joint and survivor annuities;

    e. Be ordered to restore the amount of funds to Plaintiff that would have been paid to him had the Plan Administrator not incorrectly assigned the costs of the QJSA to Plaintiff;

    f. Be surcharged for the funds necessary to restore Plaintiff's accounts or interests in the Plans that would have remained had the Plan Administrator not assigned the costs of the QJSA to Plaintiff;

    g. Ordering that Plaintiff's future benefits from the Plan shall be paid without diminution for any costs of the QJSA;

    h. Ordering that any future benefits of the alternate payee from the Plan shall be paid without diminution for any costs of the QJSA; and

    i. Other appropriate declaratory, injunctive, and equitable relief.

3. Grant Plaintiff declaratory and injunctive relief, finding that he is entitled to statutory damages for Defendant Committee's failure and refusal to provide Plan documents, as required by ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4), and order Defendant Committee to provide such documents to Plaintiff and to pay Plaintiff $110 per day per document from 30 days after the Plan Administrator received Plaintiff's Plan document request until it provides such documents to Plaintiff;

4. Enter an order awarding Plaintiff all reasonable attorneys' fees and expenses incurred as a result of Defendants' wrongful denial in providing benefits to Plaintiff and Defendant Committee's refusal to provide Plaintiff Plan documents;

5. Enter an order awarding Plaintiff pre-judgment interest and, to the extent applicable, post-judgment interest; and

6. Enter an award for such other and further relief as may be just and appropriate.

Dated this 14th day of August 2023.

Respectfully Submitted,

*/s/ Bryan L. Tyson*
Bryan L. Tyson
Hannah Auckland
Marcellino & Tyson, PLLC
2200 E. 7th Street, Ste 100
Charlotte, North Carolina 28204
Telephone: 704.919.1519
Fax: 980.219.7025
bryan@yourncattorney.com
hauckland@yourncattorney.com

**Attorneys for Plaintiff David Gasper**