## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CASE NO. 3:23-CV-00512-FDW-SCR

| | | |
|---|---|---|
| DAVID GASPER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | <u>ORDER</u> |
| | ) | |
| EIDP, INC., f/k/a E.I. DUPONT DE | ) | |
| NEMOURS AND COMPANY; | ) | |
| CORTEVA, INC; THE PENSION AND | ) | |
| RETIREMENT PLAN; and THE | ) | |
| BENEFIT PLANS ADMINISTRATIVE | ) | |
| COMMITTEE, | ) | |
| | ) | |
| Defendants. | ) | |

**THIS MATTER** is before the Court on Defendants' Motion to Exclude Plaintiff's Expert Report, (Doc. No. 30), Plaintiff's Motion for Summary Judgment, (Doc. No. 31), and Defendants' Motion for Summary Judgment, (Doc. No. 29). These matters have been fully briefed, (Doc. Nos. 34, 35, 36, 38, 39, 40), and are ripe for ruling. For the reasons set forth below, Defendants' Motion to Exclude the Expert Report is **GRANTED**. Plaintiff's Summary Judgment Motion is **DENIED**. Defendants' Summary Judgment Motion is **GRANTED**.

## I.      BACKGROUND

Plaintiff filed a Complaint against EIDP, Inc., formerly known as E.I. DuPont de Nemours and Company ("DuPont"); Corteva Inc.; the Pension and Retirement Plan; and the Benefit Plans Administrative Committee (collectively "Defendants"). Plaintiff brings three claims against Defendants under the Employee Retirement Income Security Act of 1974 ("ERISA"): (1) denial of benefits claim under 29 U.S.C. § 1132(a)(1)(B); (2) statutory penalties claim under 29 U.S.C. § 1024(b)(4); and (3) attorneys' fees and costs under 29 U.S.C. § 1132(g).

Case 3:23-cv-00512-FDW-SCR   Document 42   Filed 08/28/24   Page 1 of 22

Plaintiff's claims arise out of his employment with EIDP, Inc. and alleged denial of benefits under the Pension and Retirement Plan ("Plan"). Plaintiff was an employee of DuPont from February 1, 1984, and remains an employee of EIDP, Inc. at present,

Plaintiff was married to his wife from 1985 until their divorce on December 8, 2010. During the twenty-five-year marriage, Plaintiff accrued a pension benefit under the Plan. Pursuant to a Domestic Relations Order ("DRO"), Plaintiff's accrued benefit under the Plan was identified as martial assets for equitable division. (Doc. No. 17, p. 612–15.) The DRO was a "shared interest" Order, indicating the Alternate Payee (i.e., ex-wife) receives her benefit only when the Participant (i.e., Plaintiff) commences his benefit. (Id.) This benefit would then be receivable by the Alternate Payee over Plaintiff's lifetime. (Id.) The DRO also indicated the Alternate Payee should be treated as a surviving spouse for the available qualified joint and survivor annuity ("QJSA"). Importantly, the DRO provided, "The Alternate Payee's benefit may be reduced as necessary to cover the cost of the QJSA awarded to Alternate Payee." (Id., p. 614.)

In April 2013, Plaintiff and the Alternate Payee submitted the DRO to the Plan Administrator. The Plan Administrator provided a Determination Report stating the DRO "meets the requirements for a qualified domestic relations order (QDRO)" and the Plan "will distribute benefits to the [A]lternate [P]ayee in accordance with the order and Plan terms." (Id., p. 354–356.)

EIDP announced, effective November 2018, any further accumulation of benefits would cease on account of significant corporate restructuring. (Id., p. 194–95.) As a result, despite still being employed, Plaintiff was able to elect to commence receipt of his retirement benefit under the Plan. On June 1, 2019, Plaintiff commenced his Plan benefit which he elected as $3,400 a month and included a fifty percent spouse benefit option ("SBO"). (Id., p. 393.)

Plaintiff contacted DuPont Connection, now Corteva Connection, after receiving his retirement kit. (Id.) Plaintiff sought clarification as to why his benefit was reduced from $3,785.26 (single life annuity benefit amount after the QDRO offset of $1,454.72) to the amount of $3,400. (Id.) Plaintiff indicated the Alternate Payee's benefit should be reduced to cover the "cost" of the QJSA benefit. (Id.)

The Corteva Pension Team ("the Team"), along with the Pension Actuary ("the Actuary"), reviewed Plaintiff's May 2013 QDRO. (Id.) The Team and the Actuary acknowledged the court order's language stating: "the Alternate Payee's benefit may be reduced as necessary to cover the cost of the QJSA." (Id., p. 395.) However, this language was not included in the QDRO Determination Report by DuPont Legal, the team responsible for qualifying orders. (Id.) The Pension Team drafted the following response in an Informational Notice to Plaintiff in October 2019:

> We have confirmed the court order does reflect language that indicates that the alternate payee's benefit may be reduced as necessary to reflect the cost of the QJSA awarded to the alternate payee. However, the "cost" of a QJSA benefit is an actuarial adjustment to convert a benefit payable over the participant's lifetime to a benefit payable over the joint lifetimes of both the participant and surviving spouse. As such, there is no actual 'cost' that may be assigned to the alternate payee, and no optional form that would accomplish that result.
>
> Because a QDRO may not require a plan to pay a benefit in an optional form that is not offered under that plan, your court order was qualified disregarding the language addressing "cost." The Determination Report issued by DuPont Legal on May 1, 2013 [ ] states: "At the participant's benefit commencement date, the total monthly benefit will be reduced to cover the cost associated with the QJSA." Therefore, the total benefit was actuarially adjusted to reflect the joint life expectancy requirement of the QJSA benefit, and then the portion of the total benefit payable to the alternate payee was deducted.

(Id., p. 394, 419.) The response from the Team also included a calculation of Plaintiff's fifty percent SBO. (Id., p. 420.) In response, Plaintiff submitted a Level 1 Appeal on January 14, 2020, to Corteva Connection regarding his QJSA benefit. (Id.) The Corteva Connection Benefit

Determination Review Team ("the Determination Review Team") denied Plaintiff's Level 1 Appeal on June 12, 2020. (Id., p. 395.) In doing so, the Determination Review Team referenced page eighty-two of the Summary Plan Description ("SPD") and the Corteva Connection letter sent to Plaintiff in October 2019. (Id.)

Plaintiff sent a Level 2 Appeal to Corteva Connection on July 17, 2020. (Id.) HR Total Rewards again recognized Plaintiff's QDRO was qualified absent recognition of the Order stating, "the Alternate Payee's benefit may be reduced as necessary to cover the cost of QJSA." (Id.) On September 29, 2020, it is communicated to Plaintiff the QJSA cost is an actuarial adjustment and cannot be assigned only to the Alternate Payee under the terms of the Plan. (Id.) Therefore, HR Total Rewards recommended the Corteva Benefit Appeals Committee ("Appeals Committee") uphold the Level 1 denial, and affirm Plaintiff's $3,400 monthly benefit. (Id.) The Appeals Committee denied Plaintiff's Level 2 Appeal, and informed Plaintiff he exhausted all administrative remedies. (Id., p. 350–51.)

## II.     STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)

4

(internal citations omitted). Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 818 (4th Cir. 1995). Comparatively, when the moving party would bear the burden of proof at trial, the initial burden is satisfied by producing evidence upon which a reasonable jury could return a favorable verdict. Brinkley v. Harbour Recreation Club, 180 F.3d 596, 614, n.10 (4th Cir. 1999). In such circumstances, summary judgment will be granted unless the nonmoving party produces evidence upon which a reasonable jury could return a verdict in their favor. Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002).

When ruling on a summary judgment motion, the Court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248. Also, the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. Id. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. Id. at 249–50. In the end, the

5

question posed by a summary judgment motion is whether the evidence as applied to the governing legal rules "is so one-sided that one party must prevail as a matter of law." Id. at 252.

## III.     ANALYSIS

**A.     Motion to Exclude Expert Report**

Defendant argues Plaintiff's designation of an expert must be stricken because it was made after expiration of the deadline to designate experts and not in the administrative record. Plaintiff contends the expert report was disclosed, the expert report is timely, and it is within the Court's discretion to consider the expert report. The Court agrees with Defendant.

1.     Disclosure of Expert

Federal Rule of Civil Procedure 26(a)(2)(A) requires a party to disclose "the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence." Federal Rule of Civil Procedure 26(a)(2)(B) requires "this disclosure [to be] accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case." A party is required to make expert witness disclosures "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). Absent court orders permitting otherwise, a party must add or fix any information regarding an expert witness' opinion and report at least thirty days before trial. Fed. R. Civ. P. 26(e)(2), (a)(3)(B).

The purpose of Federal Rule of Civil Procedure 26(a) is to permit litigants "to adequately prepare their cases for trial and avoid unfair surprise." Russell v. Absolute Collection Servs., Inc., 763 F.3d 385, 396 (4th Cir. 2014). Consequently, a party who does not comply with the expert witness disclosure requirements is not allowed to "use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is

6

harmless." Fed. R. Civ. P. 37(c)(1). The Advisory Committee Note to Rule 37 indicates "a strong inducement for disclosure of material that the disclosing party would expect to use as evidence, whether at a trial, at a hearing, or on a motion, such as one under Rule 56" by the deadline. Fed. R. Civ. P. 37 (advisory committee's note to 1993 amendment).

District courts maintain "broad discretion" in considering whether a party's nondisclosure or untimely disclosure of evidence is substantially justified or harmless. Wilkins v. Montgomery, 751 F.3d 214, 222 (4th Cir. 2014) (quoting S. States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 597 (4th Cir. 2003)). In determining this, district courts are directed by the following factors:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

Sherwin-Williams Co., 318 F.3d at 597. The first four factors relate to the harmlessness exception, and the last factor pertains to the substantial justification exception. Id. The party who fails to disclose information must demonstrate the nondisclosure was substantially justified or harmless. Wilkins, 751 F.3d at 222 (citations omitted). Applying these principles, the Court finds Plaintiff's disclosure of expert Steven B. Long[1] is untimely and neither harmless nor substantially justified.

In considering the surprise to the Defendant, it was not minimal. Plaintiff contends Defendant was put on notice regarding Plaintiff's retention of an expert. Defendant maintains the expert report is untimely. In the "Certification and Report of F.R.C.P. 26(f) Conference and Discovery Plan," ("Report"), Plaintiff indicated "a report from an expert will help explain the valuation process," (Doc. No. 9, p. 4.) This is Plaintiff's only indication an expert would be

---

[1] The Court notes the undersigned is personally acquainted with Mr. Steven B. Long. The Court's familiarity with the proposed expert has not affected the ruling in this matter. The Court is disclosing this social relationship out of an abundance of caution.

7

retained. In the same Report, pursuant to Rule 26(a)(2), the parties mutually agreed any reports from retained experts would be due from both Plaintiff and Defendant by February 8, 2024. (Id.) Plaintiff's statement in the Report did not indicate Mr. Long, an attorney, would be retained as an expert to opine on "Allocation of Cost of Alternate Payee's Survivorship Benefit." (See Doc. No. 30-2.) Furthermore, the report by Mr. Long was submitted three weeks after the mutually agreed deadline for expert reports.

Thus, because Plaintiff's indicated vaguely what an expert would be used for, and submitted the report three weeks beyond the deadline, the Court "can only conclude" Defendant was surprised. Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC, NO. 3:19-CV-00515, 2022 WL 884275, at *7 (W.D.N.C. Mar. 24, 2022) ("Therefore, the Court can only conclude that [plaintiff] was surprised by [defendant's]" late disclosure of lay witness because defendant did not disclose use of lay witness and substance of witness report was not included in defendant's counterclaims.) The first factor does not weigh in favor of finding harmlessness.

However, the surprise was curable. This factor is best understood as the ability to "minimiz[e] the prejudicial effect of any purported surprise . . . or disrupt the trial" Rhyne v. United States Steel Corp., 474 F. Supp. 3d 733, 756 (W.D.N.C. 2020). Said differently, "[the second factor] is best understood as requiring the Court to weigh the magnitude of the effort that would be required to allow the new evidence to be fairly included as part of the case." Duke Energy Carolinas, LLC, 2022 WL 884275, at *7. Plaintiff contends the expert report was produced by the discovery deadline and a month ahead of the dispositive motions' deadline; therefore, Defendants' had time to talk with and/or depose Mr. Long. The Court finds Defendants were able to cure the surprise of Plaintiff's expert report because it did not meaningfully impact Defendant's ability to defend its case, as trial was many months away. See Bresler v. Wilmington Trust Co., 855 F.3d

8

178, 194 (4th Cir. 2017) (concluding plaintiff's untimely disclosure did not impact defendant's ability to conduct its defense in any material respect where defendant had access to the untimely disclosed information two months before trial) (quoting <u>Rhyne</u>, 474 F. Supp. 3d at 756). Additionally, in considering the third factor, permitting the expert report would not disrupt the trial from the standpoint of extending it. <u>See Duke Energy Carolinas</u>, 2022 WL 884275, at *8 (concluding the use of untimely damages claims through lay witness would create "trials within trials" and therefore, disrupt and "substantially lengthen" the trial.) These factors weigh in favor of finding harmlessness.

Still, considering the fourth factor, the use of the expert report is not "important" evidence. Mr. Long is presently an attorney at Ward and Smith, P.A. (Doc. No. 30-2, p. 11). Mr. Long's practice focuses on tax, employee benefits, and tax-exempt entities. (Doc. No. 30-2, p. 11.) Plaintiff intends to offer the expert report to "explain the valuation process in accurate and straightforward terms." (Doc. No. 9, p. 4.) Defendant claims the expert report consists of inadmissible legal opinions and conclusions.

Federal Rule of Evidence 704(a) permits expert testimony on "an ultimate issue to be decided by the trier of fact." Fed. R. Evid. 704(a). However, opinion testimony stating a legal standard or conclusion is "generally inadmissible." <u>United States v. McIver</u>, 470 F.3d 550, 562 (4th Cir. 2006). The Court bears the ultimate responsibility of advising the finder of fact on the governing law. <u>See United States v. Savage</u>, 885 F.3d 212, 222-23 (4th Cir. 2018); <u>United States v. Miltier</u>, 882 F.3d 81, 89 (4th Cir. 2018). Testimony in the form of legal conclusions is not beneficial to the finder of fact because it "supplies the [finder of fact] with no information other than the witness's view of how the verdict should read." <u>United States v. Offill</u>, 666 F.3d 168, 175 (4th Cir. 2011).

9

Mr. Long's expert report has been provided to the Court. (See Doc. No. 30-2, pp. 4–10.) The expert report goes beyond the permissible bounds of legal testimony. Mr. Long provides the governing law and his ultimate legal conclusion, as applied to Plaintiff's case. Therefore, this report is not "important" evidence; rather, it duplicates the role of Plaintiff's counsel and encroaches on the role of this Court. Honeywell Int'l Inc. v. Opto Elec. Co., Ltd., No. 3:21-CV-00506, 2023 WL 3029264, at *12 (concluding a law professor proffered as an expert witness fails to "assist" the trier of fact, instead encroaching on the trier of facts' role in the trial "while also duplicating the role of counsel in closing argument"). Ultimately, this factor does not weigh in favor of finding harmlessness.

Finally, the Court considers Plaintiff's explanation for its failure to timely disclose the expert report. Plaintiff fails to provide a sufficient explanation for the delay in disclosing the expert report. In fact, Plaintiff does not provide any reason for the untimely disclosure. Instead, Plaintiff contends the report is timely because it was submitted on the final day of discovery and Defendant had notice. However, Plaintiff's position ignores both the mutually drafted Report indicating a due date for expert reports and relevant case law. See Duke Energy Carolinas, LLC, 2022 WL 884275, at *9 (concluding a "'notice' defense . . . cannot serve as independent 'justification' for delayed disclosure"). Therefore, the Plaintiff fails to present a substantial justification for its untimely disclosure of the expert report.

In sum, weighing all relevant factors, the Court finds Plaintiff has failed to carry it burden to prove disclosure of the expert report is either timely, or in the alternative, harmless or substantially justified.

2.      ERISA Administrative Record

Even if Plaintiff demonstrated the expert report as timely, or in the alternative, its untimeliness as harmless or substantially justified, the expert report should not be included because it is not in the administrative record.

The Fourth Circuit utilizes an abuse of discretion standard of review of ERISA benefits claims. Firestone Tire & Rubber Co. v. Burch, 489 U.S. 101, 103 (1989). Here, Plaintiff's use of a practicing attorney's legal conclusions as applied to the facts of his case does no more than present cumulative evidence of the legal arguments Plaintiff's attorney should make. Quesinberry v. Life Ins. Co of North America, 987 F.2d 1017, 1027 (4th Cir. 1993) ("If the evidence is cumulative of what is presented to the plan administrator, or is simply better evidence than the claimant mustered for the claim review, then its admission is not necessary."). The expert report is not a part of the administrative record and will not be considered by this Court. See Gallagher v. Reliance Standard Life Ins. Co., 305 F.3d 264, 276, n.12 (4th Cir. 2002), as amended (Oct. 24, 2002) (concluding there will be no consideration of a declaration submitted in a support of a motion for summary judgment in ERISA benefit denial case where plaintiff fails to allege exceptional circumstances); see also Dippel v. Phillips Prod. Inc., No. 1:09cv253, 2011 WL 1233705, at *3 (W.D.N.C. Mar. 29, 2011) ("The Court therefore will exclude the matters submitted by the parties which are not contained within the administrative record."). Therefore, the Court will not consider the expert report because it is not within the administrative record.

Therefore, in accordance with Rule 37(c)(1) and ERISA specific case law on a district court's review of the administrative record, the Court grants Defendant's Motion.

**B.    Summary Judgment**

1.        Statute of Limitations

The parties agree Plaintiff's final denial of benefits under ERISA occurred on September 29, 2020. However, the parties disagree on the applicable statute of limitations period. State law outlines the limitations period, while federal law defines when an ERISA cause of action accrues. Heimeshoff v. Hartford Life & Acc. Ins. Co., 571 U.S. 99, 105 (2013) ("A participant's cause of action under ERISA accordingly does not accrue until the plan issues a final denial."). Plaintiff contends North Carolina's three-year statute of limitations for breach of contract claims should apply to claims under ERISA §§ 502(a)(1)(B) and (c). Alternatively, Defendant contends Plaintiff's claims under ERISA §§ 502(a)(1)(B) and (c) are untimely pursuant to North Carolina choice of law rules, applying Delaware's one year statute of limitations for breach of contract law. The Court agrees with Plaintiff.

Statute of limitations provide the period during which a claim must be brought. Heimeshoff, 571 U.S. at 105. ERISA does not provide a statute of limitations for ERISA §§ 502(a)(1)(B) or (c). Therefore, the Court must examine the most analogous state law statute of limitations. Dameron v. Sinai Hosp. of Balt., Inc., 815 F.2d 975, 981 (4th Cir. 1987).

Here, the Court adopts North Carolina's three-year statute of limitations for breach of contract claims pursuant to N.C. Gen. Stat. § 1-52(1) for Plaintiff's § 502(a)(1)(B) claim. See Bond v. Marriott Intern., Inc., 637 F. App'x 726, 733 (4th Cir. 2016) (adopting Maryland's three-year statute of limitations for contract actions pursuant to ERISA benefits claim); Singleton v. Temporary Disability Benefits Plan, 183 F. App'x 293, 295 n.2 (4th Cir. 2006) (parties agreeing to the application of N.C. Gen. Stat. § 1-52(1) for ERISA benefits claim); Dameron, 815 F.2d at 981 (adopting Maryland's three-year statute of limitations for contract actions pursuant to ERISA benefits claim); Smith v. Genuine Auto Parts Inc., No. 3:12-cv-273, 2012 WL 6728279, at *4 (W.D.N.C. 2012) (adopting N.C. Gen. Stat. § 1-52(1) three year statute of limitations for contract

claims pursuant to ERISA § 502(a)(1)(B)); Woody v. Walters, 54 F. Supp. 2d 574, 578–79 (W.D.N.C. 1999) ("[T]he applicable statute of limitations for § 1132 actions in North Carolina is three years."); United Food & Com. Workers Local 204 v. Harris Teeter Super Markets Inc., 716 F. Supp. 1551, 1560–61 (W.D.N.C. 1989) ("While this matter is not free from doubt, this Court is of the opinion that Plaintiffs' claims [pursuant to 29 U.S.C. § 1132(a)(1)(B)] are most analogous to claims for breach of contract . . . North Carolina has a three year statute of limitations for actions upon contracts.").

Likewise, the Court adopts N.C. Gen. Stat. § 1-52(1) for Plaintiff's ERISA § 502(c), 29 U.S.C. § 1132(c) claim. See Middleton v. Russell Group, Ltd., 924 F. Supp. 48, 51–52 (M.D.N.C. 1996) (agreeing with United Food, 716 F. Supp at 1560–61, and applying North Carolina's three-year statute of limitations to 29 U.S.C. § 1132(c) claim).

Accordingly, since the parties agree Plaintiff's final denial occurred on September 29, 2020, Plaintiff's August 14, 2023, claims under ERISA §§ 502(a)(1)(B) and (c) are timely pursuant to N.C. Gen. Stat. § 1-52(1).

2.   ERISA Standard of Review

The parties disagree on the appropriate standard of review to apply in evaluating the cross motions for summary judgment. Plaintiff contends the *de novo* standard of review applies because the instant case does not involve interpretation of the Plan terms; rather, Plaintiff argues it involves interpretation of the QDRO which is a state order and contract between the parties. Alternatively, Defendant contends the Plan document and benefits "are reviewed under an abuse of discretion standard or 'arbitrary and capricious' standard of review" because the Plan Administrator was granted discretionary review to construe the terms of the Plan and calculate benefits. (Doc No. 29-1, p. 14.)

13

In the ERISA context, courts conduct *de novo* review of an administrator's denial of benefits unless the plan grants the administrator discretion to determine a claimant's eligibility for benefits or to construe the terms of the plan, in which case the administrator's decision is reviewed for abuse of discretion. <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 111 (1989); <u>Cosey v. Prudential Ins. Co. of America</u>, 735 F.3d 161, 165 (4th Cir. 2013). Comparatively, a Plan Administrator's interpretation of a QDRO is subject to *de novo*, rather than deferential review. <u>See, e.g.</u>, <u>Matassarin v. Lynch</u>, 174 F.3d 549, 563 (5th Cir.1999) ("The QDRO, unlike the Plan, is a separate, judicially approved contract between Jenkins and Matassarin, which the Plan administrator has no special discretion to interpret."); <u>Hullett v. Towers, Perrin, Forster & Crosby, Inc.</u>, 38 F.3d 107, 114 (3d Cir. 1994) ("The district court did not err in holding that it should review *de novo* the plan administrator's construction of the [QDRO], which involved issues of contract interpretation under the [QDRO] and not the Plan."); <u>Amron v. Yardain Inc. Pension Plan</u>, No. 18 Civ. 11336, 2019 WL 6619107, at *3 (S.D.N.Y. Dec. 5, 2019).

Here, Defendants are correct in that the Plan clearly grants the Plan Administrator "final authority and discretion to interpret the Plan, [and] resolve any ambiguities and determine eligibility for benefits." (Doc. No. 17, p. 160, 191.) However, the true tension over the appropriate standard of review seemingly stems from the interpretation of the DRO[2] used to determine it can be construed as a QDRO[3]. The Court will review the Plan Administrator's interpretation of the QDRO *de novo*.

---

[2] A DRO, for purposes of ERISA, is any order relating "to the provision of . . . marital property rights to a spouse . . . and is made pursuant to a State or Tribal domestic relations law. 29 U.S.C. § 1056(d)(3)(B)(ii).

[3] A QDRO is defined in 29 U.S.C. § 1056(d)(3)(B)(i). Prior to 1984, ERISA's provisions failed to clearly delineate the interest of a non-employee spouse in pension benefits of the employee spouse. Under the 1984 amendments to ERISA, if a domestic relations order provides for distribution of part or all of a participant's benefits under a qualified pension plan to an alternate payee and meets the requirements set forth in the statute, then the creation, recognition, or assignment of these benefits to the alternate payee is not considered an assignment or alienation prohibited by ERISA's spendthrift provisions.

The DRO signed by a North Carolina state court judge reads in pertinent part, "The Alternate Payee's benefit may be reduced as necessary to cover the cost of the QJSA awarded to the Alternate Payee." (Doc. No. 17, p. 614.) Through a Determination Report, the DRO was determined to meet the requirements for a QDRO. The Determination Report additionally stated, "At the participant's benefit commencement date, the total monthly benefit will be reduced to cover the cost associated with the QJSA." (Doc. No. 17, p. 355.) Meaning, the Plan Administrator did not allocate the entire "cost" of the QJSA to the Alternate Payee as Plaintiff contends the QDRO required. In addition to the term "cost" being disputed[4], Defendants ultimately argue the interpretation of the QDRO is consistent because the QDRO does not require the "cost" of the QJSA be exclusively borne by the Alternate Payee. This Court looks to North Carolina law to interpret terms of the QDRO. Parsons v. Bd. of Trustees of Boilermaker-Blacksmith Nat'l Pension Trust, 487 F. Supp. 3d. 489, 496 (S.D.W.Va. 2020) ("Courts treat QDROs as binding contracts, to be interpreted in accordance with the law of the state where the QDRO was entered.") (citing Matthews v. E.I. DuPont De Nemours & Co., 682 F. App'x 148, 151 (3d Cir. 2017).

Under North Carolina law, "the terms of a contract are to be interpreted according to the expressed intent of the parties unless such intent is contrary to law." Offis, Inc. v. First Union Nat'l Bank, 150 N.C. App. 356, 363 (2002); Lane v. Scarborough, 284 N.C. 407, 410–11 (1973). "If the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract." Walton v. City of Raleigh, 342 N.C. 879, 881 (1996). "When the parties use clear and unambiguous terms, such contracts can be interpreted by the court as a matter of law." Robertson v. Hartman, 90 N.C. App. 250, 252 (1988). In construing a contract, "words are to be given their

---

[4] According to Corteva, the "cost" of a QJSA benefit is in fact an actuarial adjustment to covert a benefit payable over the participant's lifetime to a benefit payable over the joint lifetimes of both the participant and surviving spouse. Thus, there is no actual "cost" assignable to the alternate payee. (Doc. No. 17, p. 252.)

15

usual and ordinary meaning and all the terms of the agreement are to be reconciled if possible." <u>Nationwide Mut. Ins. Co. v. Mabe</u>, 115 N.C. App. 193, 198 (1999). Where ambiguities arise, the "basic contract law principle *contra proferentem* counsels that we construe any ambiguities in the contract against its draftsman." <u>Maersk Line, Ltd. v. United States</u>, 513 F.3d 418, 423 (4th Cir. 2008).[5]

Generally, the word "may" has two ordinary meanings. First, "may" can be used to convey discretion. Second, "may" can also be used to convey the possibility of something coming to pass. However, "may" is not usually or ordinarily used to convey a requirement or exclusivity. When evaluating the QDRO holistically, there is no indication from any of the terms that Plaintiff and the Alternate Payee intended for "costs" of the QJSA to be deducted only from the Alternate Payee. As noted above, a QDRO provides a mechanism through which a former spouse may be designated as an alternate payee and thereby "receive all or a portion of the benefits payable with respect to a participant under the plan." 29 U.S.C. § 1056(d)(3)(B)(i)(l). Importantly, there are specific requirements for a DRO to constitute a QDRO including one forbidding a DRO "to provide any type or form of benefit, or any option, not otherwise provided under the plan." <u>Id.</u> § 1056(d)(3)(D)(i). The "may" was interpreted to convey discretion in order for the DRO to comport with the Plan options because the Plan expressly provides the QJSA "cost" is paid for by a reduction to the total benefit amount under the fifty percent SBO option. Clearly, interpreting the QDRO in accordance with Plaintiff's preferred reading would lead to the DRO not meeting the requirements of a QDRO because it would require a division of the benefit not provided for under the Plan.

---

[5] Plaintiff seems to argue any ambiguity related to allocation of QJSA "costs" should be construed in favor of Plaintiff and against the Plan Administrator. While the Plan Administrator appears to have reviewed a draft of the DRO prior to its filing with the North Carolina state court, the Plan Administrator did not draft the DRO and only determined it constituted a QDRO.

Given the clear language in the QDRO, coupled with the structure of the QDRO and the Plan, this Court finds the contract to be unambiguous. Therefore, interpretation of the contract is a matter of law and there are no factual issues to be determined. Accordingly, the Court finds the Plan Administrator's interpretation of the QDRO proper.

### 3. Denial of Benefits Claim Under ERISA § 502(a)(1)(B)

As the Court stated above, the Plan clearly grants the Plan Administrator discretion to determine benefits. Therefore, the Court will review the Plan Administrator's denial of benefits for abuse of discretion.

The abuse of discretion standard is a highly deferential standard. Cosey, 735 F.3d at 168. As a result, the plan administrator's decision will remain undisturbed if reasonable. Williams v. Metropolitan Life Ins. Co., 609 F.3d 622, 630 (4th Cir. 2010). A reasonable decision is product of "deliberate, principled reasoning process and if it is supported by substantial evidence." Brogan v. Holland, 105 F.3d 158, 161 (4th Cir. 1997) (internal quotation marks omitted) (quoting Bernstein v. Capital Care, 70 F.3d 783, 788 (4th Cir. 1995)). The Court considers eight nonexclusive factors to determine the reasonableness of a plan administrator's decision. Booth v. Wal-Mart Stores, Inc. Assoc. Health & Welfare Plan, 201 F.3d 335, 342 (4th Cir. 2000). The eight Booth factors are as follows:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decision making process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

Id. However, "[a]ll eight Booth factor need not be, and may not be, relevant in a given case." Skinder v. Fed. Express Long Term Disability Plan, NO. 5:19-CV-00153-KDB-DCK, 2021 WL

17

1377982, at *1 (W.D.N.C. Apr. 12, 2021). The Court will not substitute its own judgment for a reasonable plan administrator's decision. See Berry v. Ciba-Geigy Corp., 761 F.2d 1003, 1008 (4th Cir. 1985). The Court will only evaluate relevant Booth factors. See Skinder, 2021 WL 1377982, at *7 (W.D.N.C. Apr. 12, 2021) (citing Helton v. AT&T, 709 F.3d 343, 357 (4th Cir. 2013)).

A review of the record reveals the Plan Administrator's decision was reasonable. The purpose and goal of the Plan, as related to the QJSA benefit, is "to ensure that the Alternate Payee has a benefit paid to her if she survives [Plaintiff]." (Doc. No. 17, p. 357.) Looking to the express language of the Plan, the Plan states the "cost for the post-retirement spouse benefit option is paid for by a reduction to your [Plaintiff's] monthly pension payment. The amount of the reduction is actuarially determined, taking into account your age and the age of your spouse as of your pension payment start date, the level of benefit elected [ ], and the Plan's investment-return rate." (Doc. No. 17, p. 148, 153.) When Plaintiff elected the Plan, he certified his choice which explained the monthly benefit would be $3,400 and not the higher amount he now contends he is entitled to. (Doc. No. 17, p. 332.) It was this certification in conjunction with the various sections of the over hundred-page Plan and the QDRO which the Plan Administrator relied on to deny the portion of Plaintiff's benefits requested. Then, after Plaintiff raised a question regarding the amount of his benefit, the Informational Notice interpreted the Plan the same. Again, nearly a year later, the Appeals Council interpreted the QDRO and Plan consistent with how it had been interpreted. As this Court has made clear, requiring the QJSA "cost" be allocated solely against the Alternate Payee's distribution would go against the ERISA requirements because a QDRO is prohibited from providing a benefit or option not available under the Plan. This Court finds no evidence in

18

the record supporting a conclusion the Plan Administrator came to its decision through a process that was unprincipled or unreasonable.

The sum relevant <u>Booth</u> factors weigh in favor of finding the Plan Administrator's denial of benefits reasonable. Because sufficient evidence is contained in the record to support the determination the "cost" of the QJSA could not be allocated in the manner in which Plaintiff wants and the QDRO does not require such allocation, the Plan Administrator did not abuse its discretion in denying Plaintiff's benefits.

4.    <u>Statutory Penalty Claim Under ERISA § 502(c)</u>

Plaintiff alleges Defendant failed to provide him with "full copies of all Plan documents in a timely manner." (Doc. No. 31-1, p. 16.)

ERISA § 104(b)(4) provides:

> The administrator shall, *upon written request of any participant* or beneficiary, furnish a copy of the latest updated summary plan description, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated. The administrator may make a reasonable charge to cover the cost of furnishing such complete copies. The Secretary may by regulation prescribe the maximum amount which will constitute a reasonable charge under the preceding sentence.

29 U.S.C. § 1024(b)(4) (emphasis added). "Other instruments under which the plan is established or operated" includes legal or formal documents a plan is premised on. <u>Faircloth v. Lundy Packing Co.</u>, 91 F.3d 648, 653 (4th Cir. 1996), <u>cert. denied</u>, 519 U.S. 1077 (1997). Further, § 104(b)(4) is not interpreted broadly. <u>Id.</u> This means, a defendant is not required to turn over any and every document related to a pension plan. <u>Vincent v. Lucent Tech., Inc.</u>, 733 F. Supp. 2d 729, 740 (W.D.N.C. 2010) (citing <u>Faircloth</u>, 91 F.3d at 652).

ERISA authorizes courts, pursuant to 29 U.S.C. § 1132(c)(1), to authorize a $110/day fine against a plan administrator for failure to provide the requested information within thirty days.

19

Two factors guide a district court's discretion is whether to award statutory fees under 29 U.S.C. § 1132(c)(1): (1) prejudice to plaintiff; and (2) the administrator's conduct in response to a plaintiff's request. Davis v. Featherstone, 97 F.3d 734, 738 (4th Cir. 1996). Prejudice may include "frustration, trouble, and expense." Id. A finding of prejudice is not required for a district court to assess damages. Carroll v. Cont'l Auto., Inc., 685 F. App'x 272, 276–77 (4th Cir. 2017).

Plaintiff, by written request, requested Plan documents for the first time on July 20, 2020. (Doc. No. 17, p. 346.) In response, the Plan Administrator timely sent Plaintiff Plan documents. (Id., p. 334.) Plaintiff acknowledged receipt of Plan documents through a September 18, 2020, letter. However, in the same September letter, Plaintiff indicates the Plan documents sent in August were "faulty" and further requested "appendices . . . all copies and revisions of the Plan and SPD in effect for the entire time period relating to the QDRO determination process in 2013." (Id.) Plaintiff's contentions regarding the statutory penalties under § 1132(c)(1) rely in great part on a declaration not in the administrative record. (See Doc. No. 31-2, pp. 1–10.) The Court will not consider Plaintiff's declaration as it is not a part of the administrative record and exceptional circumstances have not been alleged. See Gallagher, 305 F.3d at 276 n.12 (concluding there will be no consideration of a declaration submitted in a support of a motion for summary judgment in ERISA benefit denial case where plaintiff fails to allege exceptional circumstances); see also Dippel., 2011 WL 1233705, at *3 (indicating "[t]he Court therefore will exclude the matters submitted by the parties which are not contained within the administrative record").

It is unclear whether Plaintiff was provided with the: (1) the *latest* SPD; or (2) appendices. It is also unclear whether Plaintiff's request for "all copies and revisions of the Plan . . . in effect for the entire time period relating to the QDRO determination process in 2013" constitutes legal or formal documents the Plan is premised on. See Faircloth, 91 F.3d at 653; ERISA § 104(b)(4).

20

Nonetheless, if Plaintiff was not provided with the requested documents in a timely manner, it did not seem to prejudice him in the administrative appeals process as his Level 2 Appeal was received the same days as his first written request for Plan documents. See Wilson v. United Healthcare Ins. Co., 27 F.4th 228, 246 (4th Cir. 2022) (finding defendant's failure to provide a pension plan and its guidelines "impeded the [administrative] appeal process"); (see also Doc. No. 17, pp. 346, 360.) Further, the Plan Administrator was responsive to Plaintiff's request for documents. The Plan Administrator complied with Plaintiff's *verbal request* for documents, an action not required under ERISA § 104(b)(4). (Doc. No. 17, p. 395.) Upon Plaintiff's first written request, he was again provided with documents. (Id., pp. 334, 346.)

Accordingly, because Defendant is not required to turn over every document related to the Plan, Plaintiff's administrative appeal process was seemingly unimpeded, and the Plan Administrator was responsive to document requests at all times, statutory penalties under § 1132(c)(1) are not warranted. See Carroll v. Continental Automotive, Inc., 685 F. App'x 272, 277 (4th Cir. 2017) (finding it within a district court's discretion upon consideration of prejudice to impose civil penalties pursuant to ERISA § 502(c)).

5.   Attorneys' Fees and Costs Under ERISA § 502(g)

29 U.S.C. § 1132(g)(1) provides, "[i]n any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." Where a party achieves "some success on the merits" a district court properly authorizes award of attorney fees under § 1132(g)(1). Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 256 (2010) (quoting Ruckelshaus v. Sierra Club, 463 U.S. 680, 694 (1983)). At this time, the Court declines to award attorneys' fees and costs under 29 U.S.C. § 1132(g). Tyce v. AT&T Corp., No. 3:21-CV-00040-FDW-DSC, 2021 WL 5022377, at *5 (W.D.N.C. Oct. 28,

2021) (finding where a plaintiff "failed to raise a genuine issue of material fact" the Court declined the award of attorney's fees and costs under § 1132(g). The Court grants leave for either party to file subsequent motions for fees and costs consistent with the Court's rulings in this Order.

### III.   CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion to Exclude Expert Report, (Doc. No. 30), is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment, (Doc. Nos. 31), is **DENIED**.

**IT IS FURTHER ORDERED** that the Defendants' Motion for Summary Judgment, (Doc. Nos. 29), is **GRANTED**.

**IT IS SO ORDERED.**

Signed: August 27, 2024

Frank D. Whitney
United States District Judge

22